Good morning, Your Honor, Tariq Adlai on behalf of Faisal Ashraf. Could you just pick up the microphone just a little bit? Good. Thank you. Good morning. I heard you the first time, but I hear you better now. Actually, having sat on the panel, Judge Hurwitz, you may remember that in a co-defendant's case, this court held that the district judge's exact same diatribe against these plea agreements violated Rule 11. In this case, after inviting and inducing Mr. Ashraf to withdraw his plea, the court then went volt fast and hectored him into withdrawing, I'm sorry, relinquishing the motion to withdraw that he had recently convinced him to pursue. Judge Carter knew he was running roughshod over Rule 11. It's a rule he'd previously actually several times referred to as quote, speed, until he convinced Mr. Ashraf to stick with the plea he had recently said he wanted to tear up. And troublingly, Mr. Ashraf pled guilty to conduct that he did, wouldn't, was, that the conduct he committed was not a crime. Well, when he, he, two separate issues there. So he knew when he pleaded guilty to the conduct that it might not be a crime. The plea agreement could not have been clearer. There's a Ninth Circuit case that says this is, this may not, that's, this is not a crime, but you don't intend to raise that argument. So I don't think you can, there may be difficulties with what Judge Carter did in talking to him about withdrawing the plea, but I don't think, I don't think any of that convinced him to plead guilty to something that wasn't a crime. He knew it wasn't a crime. So this relates to the motion to withdraw. I do want to address, of course, the waiver. Let's focus, let's start where you started. Start with the waiver? Yeah, no, let's start where you started, which is dealing with the rule, the so-called rule 11 colloquy. And I know we have a case that says this is a rule 11 colloquy, even though it's really not. Gabriel. Correct. You're right. Okay. So, but here's, here's my question. Judge Carter at some point says, wait a minute, essentially, I'm rephrasing, but I think accurately. Maybe I've said too much. So I'll tell you what, you want to think about withdrawing the plea? I'll appoint you a new lawyer. She can't be here until next week. You can confer with her. You can then make the motion if you want. It may be that you'll have a very good reason to withdraw the plea and I'll, you know, and I'll consider it at the time. And then Mr. Your client, I don't want to get his name wrong, Ashraf goes back and speaks to his own lawyer who has all along said, this is a nutty idea. You shouldn't withdraw your plea. And then comes back after some period of time conferring with his lawyer and says, no, your honor, I've now decided to, to stick with the plea. Does that distinguish this case from our previous case? Because it seems to me, first of all, I must admit, I think the previous case is kind of nutty. I don't understand how a motion to withdraw a plea falls within a rule 11 colloquy, but it's there and we're stuck with it. But it does seem to me that the judge here at some point said, wait a minute. Timeout. Forget everything I've said. You want a new lawyer? I'll get you one. You can talk to her next week. You can confer and then make it a clean decision. And then for whatever reason, I assume because Mr. Ashraf's counsel said to him, don't withdraw the plea. It's a, it's a, it's a bad idea for all the reasons I've already put on the record. Mr. Ashraf comes back and says, I'm going to keep the plea. In that set of facts, why should we find error on the part of the trial judge? Certainly, your honor. So let me, let me say there are two things. First of all, we have a series of besieges on Mr. Ashraf by the district judge and to which is his lawyer was a party as well. Um, in which the judge makes clear his position. You should not withdraw this plea. Do not. Wait a minute. Isn't that significant? Because allowing a person to withdraw their plea is within the discretion of the district judge. So there doesn't seem to be any basis for us to conclude that the judge would have allowed him to in fact, withdraw the plea as you're saying, he made it clear that he thought that was a bad idea and he shouldn't do it. Um, so how, how did this affect Mr. Ashraf's substantial rights? I mean, in other words, it didn't make a difference. Not true. You're right. You're judge Carter was saying that that was his, his impression, but he wasn't presented, he wasn't presented with anything yet. He pretermitted any discussion or conversation about it. So he didn't have, he was making a personal decision as to what he wanted to do, but judges are confronted with law and facts and they make decisions. We expect them to make decisions based on law and facts and not just what they individually arbitrarily want to do. And so I'm not accusing judge Carter of being arbitrary at all, but I'm saying that that was his inclination and his gut inclination. He later said, and that's why I asked, he later said, wait a minute. I don't know why you want to withdraw the plea. Uh, I've, I've tried to warn you of the consequences of withdrawing it. But I, I, if you want to think about withdrawing it, you better talk to a new lawyer, a new lawyer will be here next week to talk to you. And then he comes back and says no after conferring with his current counsel. Now we don't know what current counsel said to him. I can imagine what current counsel said to him. Probably said what the judge just told you is exactly right. You're exposing yourself to, to 20 years in jail by, by, you know, by withdrawing the plea. But it strikes me that there's a little bit of a cure there. The judge says, wait a minute, maybe I've said too much. Here's what we'll do is Mr. Ashraf, you want to think about withdrawing the plea? Think about it till next week. I'll bring in a new lawyer. She can talk to you. You can make a decision. And then he comes back without any prompting by the judge after that and says, no, your honor, I've decided to, to stay with the plea. So that's what, that's what troubles me about this part of your argument. So let me, I, I, sorry, I didn't get to your first question, your, well, that question earlier. So there were multiple conversations and, or, or multiple iterations of the discussion. And in each of those, Judge Carter made clear that he did not want Mr. Ashraf to withdraw his plea or to follow through with a motion. He did say, and, and Mr. Ashraf said on, was asked on several occasions and he reaffirmed, yes, I want to withdraw my plea. And at the last instance, I think it was the third iteration where Mr. Ashraf reasserted, yes, I do want to withdraw my plea. That is, Judge Carter did say, I'll give you time to, to, to, to confer with another lawyer, but he also took another eight minutes to reinforce how much he did not want Mr. Ashraf to withdraw his plea. And he, it was another diatribe. And although he pro, he proposed to reconvene in seven hours, he proposed reconvene, I'll give you the time. We will meet at four o'clock. His, his, his repeated diatribes made clear, despite the... Tell me, tell me where in the record there's a diatribe after Ms., after the judge says, you know, this is what you want to do. Maybe you're entitled to, we'll postpone things till next week. He does say the trial will follow soon after a plea if you withdraw it, but I don't think there's anything wrong with that. So just give me a record site for where you think that repeated diatribe occurs. Certainly, Your Honor. He said, so at, at volume one, page 34 is where he, he's, he'd gotten on the phone with the lawyer, the lawyer was, the lawyer that Mr. Ashraf was looking to, to hire. Can't be there. Wasn't, and Judge Carter actually made arrangements so that the lawyer would meet him in the middle of the day at 1230. This is an eight o'clock status conference. And he made arrangements with the lawyer directly, middle, they went off the record, made arrangements for a 1230 meeting. Mr. Ashraf did not, and then the judge went back on and reiterated to Mr. Ashraf, don't withdraw your plea. I don't want you to withdraw your plea. You're not going to have a, you're not going to have an adequate trial. You're not going to have time to prepare for trial. And these are concerns that do go directly to the essence of what rule 11 is about, is confirming that to, to, to maintain the judge's appearance of impartiality, that the judge doesn't have a personal involvement in any outcome or the resol, the particular resolution. The rule 11 is concerned about the high risk of coercing defendants to do what the judge, to do what the judge recommended. I'm still, I'm still back here. What I have is, and I'm looking at page 34, the judge says, after he says, I've talked to Ms. Corrigan and she can meet with you at 1230. And then the judge says, the more I think about it yet, I've got to do some research, I'm not going to prejudge that. If there's a basis that there was some reason, I'm not going to prejudge it. And then Mr. Feldman talks, but not the court. And the court says, the court says, look, we'll be back later. Um, where does he, I just don't see where after that he, he, he leans on Mr. Ashcroft in any way. And I, and the court, you know, the court adjourns to, that's sort of at page 40 of the transcript. 42. Yes, sir. 42. 41 to 42. I'm looking at stuff that occurred in between and I don't see the judge at that point having said, all right, maybe I've said too much. I'll bring in another lawyer. You can talk to her. We'll get back later this afternoon and see where you stand. I don't see a diet with anything that could be fairly called the diatribe after that. Sure. Well, he does keep complaining about the nature of, um, about the nature of the plea. Um, but then, you know, I'm going to give you time to meet with your counsel. Yes. 35. I think I went too far. Right. It's healthy for me to recognize that and say it. This isn't under record. Right. Um, and, um, so I'm looking for anything. See, if I view what the judge finally says, wait a minute, forget everything I said, get you a new lawyer. I went too far. You talk to her, you confer, you come back. And then he confers with his current counsel. It doesn't even want to wait for the new lawyer and comes back and says, no, Your Honor, we're, we're, I'm not going to withdraw it under those circumstances. I'm having, that's what my difficulty is. And I was looking for the diatribe, uh, and I, I can't find it. I would, Your Honor, I would say it was all part of one whole episode and that you can't, you can't completely segregate the, I'm sorry, I went too far. Forget what I said. He's the judge. He has already taken a position. He's already made, told the defendant, you got to be concerned about the nature of the trial that you're going to get and how adequate your lawyer is going to be able to, even the best lawyer is going to be able to be. Um, let me, let me poke, cause I think this is the more interesting part of the cases is why I'm using up your time on it. Uh, it's your time, Your Honor. What if he had, thank you. What if Mr. Ashraf had conferred with the other lawyer and then come back and said, Your Honor, I now don't want to withdraw my plea. Would it be your position that what the judge did up to that point? So tainted the proceedings that he, he had to allow, he had to say, I don't care what you, you want Mr. Ashraf, I'm going to let you withdraw your plea. That's the permutations in which that could have happened are so varied. The reason I ask it is because he did confer with his own counsel and then came back and said, I don't want to withdraw the plea. So I'm, I'm trying to figure out whether your position is that once having said these things, the judge had to let him withdraw the plea, no matter what he later decided or something else should have occurred. So Your Honor, I would, I would. So I would analogize to contrast with the Davila court. If three months had gone by and Mr. Ashraf had stuck and, you know, things had changed, then no, I would say no. That would be a totally different situation. Um, and what I think is significant is also that he had been conferring with his own lawyer. He had been conferring with Mr. Ritter repeatedly. Having been in this position, and I know you have too, what often happens is your client says to you, you're nuts, lawyer. You know, I'm not following your advice. And they go into court and the judge tells them that the lawyer was right. And the lawyer goes back and meets with the, meets with the count, meets with the client and the client, and the client says, oh, now I understand. But he'd been told that several times throughout this hearing, and he still wanted to press through and have his plea withdrawn, um, notwithstanding whatever conversations might've happened prior, prior to even the hearing. I mean, this hearing was set as the, um, emails in the excerpts indicate. That was a, uh, an ad hoc hearing that wasn't pre, that was scheduled in, because of this problem itself. Um, Your Honor, I do want to address the waiver. Yeah. And I've, I've used up a lot of your time, so I'm going to ask Judge Beatty to be, to be lenient with you on it. Um, you are almost out of time. You did not indicate you wanted to reserve time for rebuttal, but nonetheless, we will give you, um, well, finish up what you want to say, and then we'll see where we are, but I'm inclined to give you a couple of minutes for rebuttal. Um, have, on this issue or the waiver? I mean, I don't think it would be appropriate for you to launch into, say, another 10 minutes of argument. This was set for 15 minutes, but you can have a few minutes if you want to make another point. Certainly. So, um, I think the most important point about the, the, um, exemption in the plea agreement is twofold. One is that, um, there's, uh, it exempts involuntary pleas. And the second is when, when the, what the government said is that the, uh, Mr. Afras should not make a, um, motion withdraw or get the plea overturned pursuant to, uh, an argument pursuant to Nozal. Um, the record is very particular as to what a Nozal waiver is. Judge Hurwitz, Judge Beatty, esteemed counsel, we as lawyers trained in the law have examined Nozal and know what, I think we know what a Nozal waiver is. There is nothing in the record that would clarify that to Mr. Afras, who is a lay person, not a lawyer. Um, the only thing that we have that clarifies what a Nozal waiver was the government's own statement. Um, and if I can quickly quote was that we're an employee of a company who left the company and asked people who were still working there, his friends to access that information. They were properly granted by that company. You're positioned that there was a Nozal waiver, but your client didn't understand it. Your Honor, he wasn't an ex-employee. He wasn't soliciting information from remaining employees. But that doesn't really answer Judge Hurwitz's question. It's in the plea agreement. He signs it. It's written. It's stated at the colloquy. So that's not sufficient that he is explicitly waiving the right to appeal under Nozal, which would suggest that maybe these facts do not support a factual basis, that maybe what he did in accessing the computer is not illegal under the statute. So it seems he was fully aware of that, decided to go forward with this plea. That's not what the plea says. It just says he won't make an argument. Your Honor, it improves upon the language of the plea. It references the case, right? It does reference the case. And he signed it and he had a colloquy in open court, correct? He did. And as you know, 99% of the time, if not more, the government states the factual basis for the plea on the record. So that's not unusual. So why isn't this good enough? It seems like a pretty explicit waiver. Because it was never in he was there is no indication in the record that he was informed what a Nozal, what he was doing. We have to assume malpractice, that his attorney didn't advise him of what he was signing, what this meant. This is not an assumption of malpractice. There's nothing in the record. Well, there is something in the record. There is a written plea agreement that he signs and that he says he understood when the judge asks him about it, in which the government explains in less than perfect terms, but certainly in mild, in generally accurate terms. And and now he's so, and I don't see any contention below that, gee, I didn't understand this. In other words, he didn't say, I want to withdraw the plea because I didn't understand I was waiving my Nozal rights. He, he was effectively unrepresented at that time. Mr. Riddick said, I can't make it. And, and he, well, I understand, but there's, there is no contention below that, that, that the plea was involuntary for this reason, which could have been made. So, I mean, I'm, I'm having, and, and Nozal is exactly the same as, I mean, we judge of the subsequent Supreme Court case, but the ruling is exactly the same. The Supreme Court just adopts the Ninth Circuit's position in Nozal. And so I'm having difficulty understanding why this is not a voluntary waiver of that argument, much as if a client came in and said, look, you're making a deal for me, you're giving me a, a lesser. I didn't commit to lesser, but I'll plead no low to it. I'll, you know, because it's part of the deal. So I'm having difficulty with that part of the argument. And if this were a no contest plea, Your Honor, that would be exactly what happened. That would not be an involuntary plea and there would be no challenge. Well, but isn't it, isn't it the equivalent of it? He's saying I'm admitting to everything in the offense, recognizing that there, recognizing that I may not be admitting to one of the elements, that's Nozal. I may not be admitting to one of the elements, which is that I have to have unauthorized, unauthorized to break into the system as opposed to unauthorized to use it. I'm, I'm recognizing that that element may be lacking, but I'm pleading guilty nonetheless. And why isn't that the functional equivalent of a no low? Because what Your Honor just explained, that I may not, I may have had authority, but I'm going to plead guilty anyways. That wasn't made clear. And that's the, that's the problem with why the Nozal waiver doesn't waive the Van Buren claim of innocence. And the fact that we're having this discussion. Okay, let, and we're, we've taken you way over, but I just want to, Van Buren and Nozal are the same, are they not? The principle, the principle. They, the Supreme Court says in Van Buren, the Ninth Circuit was right in Nozal. Well, it's, it's not a new ruling separate from Nozal. They, they adopt a similar view of the statute. Nozal is mentioned in a footnote when they say, there's a split in the circuits, Nozal and some other cases on one side and your cases on the other. And we choose the Ninth Circuit side. We choose, I like to say it because the Supreme Court doesn't do this very often. We choose the Ninth Circuit side. They're going to be doing it a lot more. We've taken you way over. All right. So thank you. Thank you, Your Honor. All right. So Mr. Robbins. Good morning, Your Honors. May it please the Court. Alexander Robbins on behalf of the United States. And the original Ninth Circuit case on this issue was LVRC versus BRCA, which as a former judge of CUDA clerk, I think should be emphasized. That was the original Ninth Circuit case. It was a case the Supreme Court cited in the beginning of its opinion, and it's been the law in the Ninth Circuit for well over a decade. I had wanted to start with sort of big picture waiver issues because I think this case is an opportunity for this panel to bring some clarity to the law on this issue. But given the questioning, especially from Judge Garwood's side. Can you plead guilty to a crime that you didn't commit? I know you can plead no loath. I know you can plead no loath to a crime you didn't commit. I think that's a much harder question than the one presented in this case. The question presented in this case is. But answer the harder question first. Yes. If it's knowing and voluntary, and it has to be knowing and voluntary. And that goes, I guess, to the big picture point where I think the parties are talking past each other a little bit. That Rule 11 is structured with sort of, as the Supreme Court called it, a series of prophylactic rules. That's the, in Davila, the term they use. Prophylactic procedural rules to protect the core right, due process, constitutionally based right, that a plea be knowing and voluntary. And that's what you can't waive, right? A person cannot waive the requirement that a plea be knowing and voluntary as a matter of due process, as a matter of logic. Because your waiver itself would not be knowing and voluntary. It would collapse on itself. You can't do it. What the Supreme Court said in Davila, and what this court said in Myers following Davila, is that those prophylactic procedural arguments are things that a defendant has the right to give up, to identify and give up, if it helps the defendant get something he wants at the time. In this case, a plea to three misdemeanors instead of six wire fraud, mail fraud counts, where you'd be looking at more than 100 years statutory maximum. So I think in the extreme case, Judge Hurwitz, which is not this case, yes, a defendant can knowingly and voluntarily give up, can plead to something that's not a crime. But that's not what happened here. But you're addressing the issue of waiver. And I guess what I'm trying to focus on, put waiver aside. Let's assume there had not been an appeal waiver and this issue was properly in front of us. What should we do in that case? On the merits of his claim that his plea was rendered knowing and involuntary because it turned out later that the Supreme Court affirmed our previous case. If you get passed a waiver on both these issues that we've been discussing, it goes to plain error, right? Meyer says that. So we're in plain error territory. And so by plain error, we mean merits. We have to look at the clarity, the clear, obvious nature of the error on prong two. And we have to look at what Your Honor's questions ask about with respect to the 11c1 issue. Prejudice, right? It's the defendant's burden to establish on the facts and law prejudice and effect on the substantial rights under these circumstances. You see, I'm having difficulty finding error. I'm at the first level. So you've got a plea agreement that says, I understand that I might have a really good argument against being convicted for this lesser crime, but I don't care. And that's the whole record. And there's more in this record, obviously, because Mr. Nasraf gets up and says, I understand the agreement. The government makes whatever explanation it makes. So that's all in front of us. Could we find error under those set of facts? Certainly not clear, obvious error. And I think this leads... I'm asking error. Not error at all, first. And second, not clear, obvious error. And this, I apologize, this may bleed into the waiver issue as well. But I want to be clear what happened here. This is not a case that is clearly controlled one way or the other by BRCA or NOSAL or Van Buren. You don't know yet what all the facts are. Because you don't know what the facts are. So Van Buren, just as a hypothetical, Van Buren involved a police officer, right, who was taking money from a shady friend to access his police computer in his car to run checks on names and license plates. And the Supreme Court said, this officer had the right to use his computer. It's his computer in his patrol car. He uses all that, right. We all know what the case is. This is, well, let me give my... But I understand that you don't know when you enter into the plea agreement what the facts are going to be. But the proffer here is not that I wasn't authorized to get into the system at all. The proffer here is that I probably had authority to get into the system, but then I cheated once I got in. No, Your Honor, it's not. So if you look at 118 and 119 of the excerpts of record, the bottom line factual statement is in the factual basis. He agreed in the factual basis and in open court that he accessed the computer without authorization or exceeding authorized access. What the defense is saying is based on other facts that we know from the record that came out in the fraud loss order, that that undermines that bottom line factual conclusion in light of Van Buren and Nosel. And so just to go back to the hypothetical, if we understand Van Buren's holding, it's not at all clear under Van Buren that if some third party stranger comes to the police officer and says, hi, I'm a police officer, too. Look, I'm wearing a fake uniform. Please run a name in your computer for me. Let me use your computer to run this name, fraudulently obtains access to the computer system in the first place. It's an open question, as far as I'm aware, whether that is accessing a computer without authorization or exceeding authorized access. That's an open question. What happened here was not that he pleaded guilty to something that is clearly not a crime or it's controlled by any case law that we're aware of, that either party has cited. What happened here is that the parties identified an open question under this court's case law and said, we're waiving, the defense said, we're going to waive our right to raise that issue later. It's an open question. I'm looking at 118 and 119 again. So tell me where he admits to facts that would take this case outside of the realm of no-same. On 119, I'm looking at the first full paragraph, starting with more specifically. More specifically, at his brother Hasib's request, defendant Ashraf, without authorization and exceeding authorization, intentionally accessed HP's partner portal computer system using logins and passwords that his brother Hasib provided to him. Yeah, but then the next sentence says HP would not have provided the logins and passwords if they were aware that the product, that they were going to be used for an improper purpose. But it had provided the. So is it your position that this is not a Van Buren case because his brother had authorized access, but he didn't? My. It seems to me there's plenty in this record to suggest that they jointly had authorized access, but not for this purpose. My position is this is not a Van Buren or NOSOL case at all, and this court doesn't need to get there. This court hasn't had briefing on the subject. And the reason is, is we don't have a developed record because this was an issue that the defendant identified and waived years earlier. Well, and I understand. I understand that. And that was where I started. But you then said it doesn't matter because he admitted to all the facts that would take this out of NOSOL and Van Buren. And I'm having trouble reading this factual basis. If I said that, I was mistaken. What I said was, is he admitted to the bottom line factual conclusion that puts him inside the statute. I access the computer without authorization or exceeding authorized access. Well, but then, but then, as I said, the admission goes on to say that's because my brother and I had passwords that could be used for a different purpose. And I think that gets that's why I think the plain error issue could be dispositive here. He's saying, no, based on these facts, the other facts that we know, the other facts in the record, my bottom line factual statement there that I admitted to in my proffer can't fall within the statute because it basically like it's like pleading yourself out of court, right? You can make the factual assertion, but then you plead other facts that are inconsistent with that. He's saying that factual admission, I access the computer without authorization, can't be right because it means something different based on these other historical facts we know. That's where he would fail in plain error because we simply don't have the record developed to do that. And it's his burden to develop that factual record legally and factually. It's his burden to establish the clear, obvious prong on prong two and the prejudiced prong on prong three. This takes me to the second part of the case, because if I were Mr. Adlai and he had more time and he doesn't, so I'll presume what he's going to say. I get up and say, well, you know, that's exactly the kind of argument one might have made to withdraw the plea had the judge not improperly importuned me not to do so. And that's why there's no record on this. So respond to that. I thank you, Ron, because I wanted to clarify some of what my colleague said about about this Rule 11C1C issue. So this was not a diatribe at all, much less the exact same diatribe as in his brother's case. His brother's case involved sort of, according to this court, coercion as to the dealing with here. And at no point did the defendant personally address the court to say anything other than, no, I want to keep my plea. At the end of the colloquy, it starts in the, I think, ER 25, it goes for about 25 pages. It's all right there. What's happening is the lawyer's brother's case. What about Gabriel? That was, I'm sorry. What about our, what about Judge Sneed's opinion in the, is it the Gabriel case? His brother's case was, I believe it was the judge. It might have been actually as a result of what happened here. The judge tried to get the, or got the defendant to stipulate to a restitution. No, no, I understand. I'm saying forget about his brother's case. No, I'm, I'm, that was, I agree. Go back and compare the facts in this case to, because there are more things there. Right. Go back and compare the facts in this case to this Court's previous opinion in Garfield. I'm sorry. In Garfield. Yeah, I was, I was wondering if I missed the case. It's Garfield. I have trouble with names. I think Garfield is distinguishable on two, two important grounds, both of which we, we need a little more elaboration. So, Garfield, as we said in the brief, involves a case where someone withdrew pleas and then entered new pleas. So, we're still within the ambit of Rule 11 on the plain text that we have plea negotiations leading up to the second two pleas out of the three. But more fundamentally, and we do mention this, but. No, is it, is the government's position that Rule 11 does not apply when somebody is seeking to withdraw a plea and the judge has a conclusion? Right. Rule 11 does not apply when someone's seeking to withdraw a plea. It's based on the, based on the. Is there a Ninth Circuit, Ninth Circuit case? No. And, and we're relying on the text of the rule. We're relying on the facts of Garfield. And we're relying on the fact that this Court has addressed in, I think, cases like Rahman, for example, which we cite in our brief. This Court has addressed withdrawing a plea as a separate species of procedural event, perceived potential procedural error from Rule 11c1c. But, but to go back to Garfield, and I think this is important because it goes to your line of questioning, Your Honor, Judge Horwitz. Garfield is not good law anymore to the extent that it treats 11c1 as some sort of special type of error that's different from other Rule 11 errors. Right, no. Garfield said we don't require a plea to do this because that was, I understand that. Right, Davila, Davila overruled that. And so to the extent that Garfield is turning on this unique or special nature of 11c1, it's not good law anymore. And a number of the cases that are being cited in the briefing go back to, I guess we cited Portillo, Portillo-Cano, they go back to Bruce, which is one of the cases that was litigated as being on the Eleventh Circuit side in Davila and was rejected by the Supreme Court. Right, right. But let's assume for a moment that Garfield still stands for the proposition that discussions about withdrawing a plea fall under the ambit of Rule 11c. I don't think that's correct. I understand. I ask you to assume it. Okay. You're right. You don't have to think it's correct. In Garfield, in Garfield there were subsequent pleas. Please assume it. Okay. Yes, Your Honor. I will assume it. Assume it. We get to the prejudice issue. Right. Right. How was, the normal prejudice is I would have, I would have gone ahead and withdrawn it, I guess, under the, or I wouldn't have pleaded guilty under the Rule 11 rubric. How do we establish or look at prejudice in this context? I think it's the defendant's burden to establish prejudice. And I don't see how we could do it on this record. What is the prejudice? I'm sorry? What is the prejudice? That I would have withdrawn my plea or that the judge reasonably would have granted my motion to withdraw? What is the prejudice? I think the second. So the prejudice is, Garfield says reasonably, actually, I'm sorry, Myers says reasonably likely to have affected the outcome. That's the... Of the motion. So it's got to be that he was reasonably likely to have, in the counterfactual, right, where this doesn't happen. Yes. He was reasonably likely to persist in his request to withdraw his plea, that he communicated with his lawyer, but didn't make an open court. Let's assume that he was reasonably likely to persist and... Right. He talks to the lawyer at 4 o'clock. It wasn't a week later. It was later that day. He talks to the lawyer at 4 o'clock. The lawyer at 4 o'clock tells him, I guess, something different, which seems unlikely, given that he was getting an extremely good deal. And then he comes back and personally addresses the court or finds a lawyer who was willing to make this motion for him, because his original lawyer wouldn't, because he thought it was unethical, because he was getting such a good deal, and says he wants to withdraw his plea. And then the district judge has to let him. And Davila makes clear that, yes, we go through the normal prejudice, plain error analysis with respect to these series of events. The defendant on this record can't meet his burden of showing that all those things would have happened to get him to withdraw his plea. There's just not a basis for that in the record. What happened, it seems, from the record that we have, and again, we don't... The defendant waived privilege to submit a declaration from what his lawyer was telling him or did it himself. So it's not like some maybe 20 to 55 ineffective cases where we have a record about what the conversations were. The record we have is that the defendant got a very good deal at the time and was told, his lawyer at least, that he wanted to withdraw his plea after his brother, who was much less culpable, got sentenced to six months in prison. And the judge did not go on a diatribe. The judge, probably not best practices, but the judge said, you know, you might be thinking this, but your lawyer's telling you this, was sort of going through this analysis of what was happening and said, I want you to talk to another lawyer. Yeah, but I asked you to assume that that was error. Assuming that was error, he can't show that he would have persisted in his apparent request that he meet his lawyer to withdraw his guilty plea and that the judge would have let him. I want to be clearer in my question, because you're answering a different one than the one I asked. Sorry. Does he have to show not only that he would have persisted in his request, but that a reasonable judge would have granted his request? Yes. I think he has to show, because we always assume that judges, including the district court, are acting reasonably. That's a basic tenet for appellate review, right? The district judge has to have a ground to let him withdraw his plea that's reasonable. It's subject to the district judge's discretion. The government was opposing the motion. That was the procedural backdrop, which is, I guess, part of the third hurdle that he has to get through. These three hurdles to actually show prejudice in this case, which again, it's his burden to show on plain error. I do think, and I realize I'm 50 seconds from my time, but if the panel would give me maybe 45 seconds to make my pitch on Rule 11, that Rule 11, and if you take a look at the committee notes, actually are pretty clear on this. The 1974 committee notes talk about how Rule 11 protects defendants in discussions leading up to a plea agreement, not afterwards, and the Supreme Court relied on those notes in Davila. Rule 11, the committee notes, as well as Davila, as well as actually going back to McCarthy, consistently talk about how knowing involuntariness is the core that you can't waive, but all the other prophylactic protections of Rule 11 are like any other procedural rights, and you can waive them, and the defendant in this case very clearly did, and so that's why we're primarily making a waiver argument, but yes, if you get into the facts and into the nitty gritty and the weeds on the facts, the defendant can't meet his burden to show prejudice as to either of these two issues that we've been discussing this morning. Thank you. Thank you very much. All right, Mr. Adlai, because you're standing up with your papers, I assume you are assuming that I'm going to allow you rebuttal time, although you were six or seven minutes over, so I will, but let me tell you, I'll give you two minutes, which doesn't mean five, it means two, even if Judge Hurwitz talks the entire two minutes, that's your two minutes, okay, which I think is generous. I think it takes one second to say I appreciate it. A couple of really brief points. Is it okay to plead guilty to something that is not a crime? No. The U.S. Supreme Court says that, and Henderson and McCarthy both signed in our brief. Judge Hurwitz, you mentioned, I might not be innocent of this lesser crime, but I'm going to plead guilty to it. That's not what's in the plea agreement. If that was what was in the plea agreement, that was what was waived, that would be a different story. That's not this story. It's NOSOL, and the client, the defendant, doesn't know what pursuant to NOSOL waives. According to the record, all we have is about ex-employees who've left. The factual basis here, as Judge Hurwitz pointed out, yes, HP did grant permission, but there's one point that I want to make clear that is in the record, and that is that Mr. Ashworth was originally approved as an HP partner in 2005. He did not get involved in the HP big deal things until 2006, a year later. It wasn't December and January. It was a year later. What the plea agreement says is that he accessed the HP partner portal. Not the big deal portal, the partner portal. Turns out the big deal is just a different part of the area where you get the big deal letters as opposed to the others. Garfield, that's not the facts of Garfield. The facts of Garfield was this was a post-plea colloquy. The defendant had pled guilty to three counts, and then the judge addressed him and convinced him. It was well-intentioned, well-motivated, and the court said, still, that's wrong. The defendant then said, well, I only want to withdraw as to one. It is not implicitly overruled. Garfield's holding is that a judge plainly erred in advising the defendant of the merits about pleading guilty or not, and that is not clearly reconcilable with Davila, which Garfield did not hold otherwise. It said that lecturing a defendant about withdrawing the pleas and prompting to withdraw affected the defendant's substantial rights. That inherently says we find this prejudicial, and the difference is very simple. Oh, come on. Our law at the time, I mean, that's creative, and I know Judge Beattie's going to be unhappy with me, but our law at the time was that for a Rule 11 violation, prejudice need not be shown. That's what Davila overruled. So the notion that a court that didn't require a showing of prejudice was implicitly finding prejudice is a bridge too far for me. Let me go to the facts, then. The facts in the... You know, I didn't speak up until after you used your two minutes, so I'm not sure. So you now are at three minutes, but I'm going to ask you a question, and I guess we're just going to throw the clock out. We don't have flights today, so we're good. You're saying that he had authorization as of 2005 to access HPE programs, but in the record, that authorization was revoked as to him and his brother in May 2007, early May, and then there were two other instances after that date where there's allegations that they had access to the system. So I think this is one of those murky factual issues that your friend was addressing that wasn't fully developed, but it seems that there's at least something in the record that suggests that there was access without authorization. So at that point, he was a sub-vendor to CompuCom, and so he had access through CompuCom. It was a legitimate access, and... But not through NetForce or NetWork or NetCore? Not NetCore. He was... Yeah. So... So you're saying that those two instances where he accessed HPE's programs were not under the auspices of NetCore? That is correct. That is correct. He was a sub-vendor of CompuCom at that point. And this is rather far afield, because here we are launching into a factual discussion that wasn't really developed, but had HPE authorized CompuCore to have access? Yes. CompuCom was a major vendor, a major client of HPE's, and he was authorized through them. I just wanted to point out that in Garfield, on the facts, which are similar to the facts here, is that immediately after the judge's conversation about the wisdom of withdrawing the plea is when the defendant made a decision to change his mind about what he was going to do. And Davila was completely different, in that it involved a three-month gap, and it also involved initially a magistrate judge who made statements, but the defendant's response to that was to demand a speedy trial, and to ignore the magistrate judge's advice. And so it was three months, and in that situation, and when the district judge who took the plea didn't know about any of this conversation, so there wasn't the concern about the defendant pleading guilty because he wanted to please the judge or worry about a fair trial. Okay. All right. Thank you. Thank you. Case is submitted.
judges: O'SCANNLAIN, HURWITZ, BADE